Filed 6/26/13  In re R.M. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re R.M., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E057322 |
| Plaintiff and Respondent, | (Super.Ct.No. SWJ003026) |
| v. | OPINION |
| R.M. et. al., | |
| Defendants and Appellants. | |

APPEAL from the Superior Court of Riverside County.  Matthew C. Perantoni, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Linda Rehm, under appointment by the Court of Appeal, for Defendant and Appellant M.A.

Grace Clark, under appointment by the Court of Appeal, for Defendant and Appellant R.M.

1

Pamela J. Walls, County Counsel, and Carole A. Nunes Fong, Deputy County Counsel, for Plaintiff and Respondent.

Defendants and appellants M.A. (Mother) and R.M. (Father) appeal the order terminating their parental rights to their son, R.M., Jr. (the child) under Welfare and Institutions Code[1] section 366.26. Mother claims the juvenile court erred by failing to apply the parental benefit exception of section 366.26, subdivision (c)(1)(B)(i), and Father claims the court erred in denying his section 388 petition. We disagree and affirm.

## I. PROCEDURAL BACKGROUND AND FACTS[2]

The Department of Public Social Services (the Department) received a referral alleging general neglect due to a family living in a fifth wheel trailer on the property of a scrap yard. Deputies investigated and found methamphetamine and a pipe on Father and both parents under the influence of a controlled substance; the parents were arrested. On May 6, 2011, the Department initiated dependency proceedings pursuant to section 300, subdivisions (b) and (g) on behalf of the child, who was two years old. According to the petition, the residence was uninhabitable, the parents had unresolved histories of abusing methamphetamine, and they neglected the child. Both parents were incarcerated.

According to the detention report, in 2004 Mother lost her parental rights to another child due to her substance abuse issues. Both parents admitted using

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] On November 19, 2012, on our own motion we incorporated the record in case No. E056709 in the record in this case.

2

methamphetamine. Father was not married to Mother and thus was identified as an alleged father. A detention hearing was held on May 9, 2011, wherein the court detained the child and ordered services and supervised visitation for both parents. Father was ordered to complete a "Parental Notification of Indian Status (form ICWA-020)" and submit it to the court.

According to the jurisdiction/disposition report filed on June 3, 2011, the social worker recommended that both parents be denied reunification services. While Father stated he may have Cherokee ancestry, he was not registered with a tribe and was unaware if there were any family members who were registered. Both parents confirmed that Father is the father of the child. Father had an active criminal case involving felony burglary dated March 25, 2011. Both parents preferred that the child be placed with the paternal grandparents. The child was described as experiencing "severe developmental delays, including complete speech deficit." The social worker advised both parents of their option to relinquish their rights and free the child for adoption, but both refused. According to the social worker, section 361.5, subdivision (b)(11) and (13) applied, because Mother had failed to reunify with another child for whom her parental rights were terminated, and Father had failed to benefit from prior drug treatment services.

Mother enrolled in the 16-week Riverside County Department of Mental Health substance abuse outpatient program on June 1, 2011. The program included individual and group counseling, random drug testing, and other personal growth, family addiction, and criminality classes. On June 2, the Cherokee Nation informed the Department that

3

the child "will not be considered an 'Indian [child]' in relationship to the Cherokee Nation . . . ."

A contested jurisdiction/disposition hearing was held on June 21, 2011. The court found the allegations in the petition true with the exception of allegation (g)(1), adjudged the child to be a dependent of the court, removed physical custody of him from both parents, allowed supervised visitation to continue, denied reunification services, and set a section 366.26 hearing.

According to the section 366.26 selection and implementation report filed on October 4, 2011, the child was diagnosed with autism and speech disorder.[3] He had had three placements due to his behaviors. He often had anxiety, which was shown by heavy sighing, rocking back and forth, and screaming. He needed a lot of supervision and attention to ensure that his needs were met. Mother had visited with him; however, Father had not because he was incarcerated and the child could "not handle small enclosed places." Although the visits went well, they could be overwhelming for the child when his routine was interrupted. The Department recommended adoption as the permanent plan.

The contested selection and implementation hearing was continued a few times to enable the Department to find an adoptive home. The addendum reports filed on June 7 and 11, and July 9, 2012, continued to recommend adoption as the permanent plan. The

---

[3] He was also diagnosed with hepatitis C and would "eventually need a liver transplant in his teenage years."

child's caretaker had submitted an application to adopt him on March 29, 2012. The child appeared to have a great bond with his caretaker and accepted the limits she set.

On April 25, 2012, Mother filed a section 388 petition requesting that the section 366.26 hearing be vacated and that she be granted six months of reunification services. She alleged that she had completed a substance abuse treatment program with an excellent progress report, had tested clean over 20 times, completed parenting classes, and continued in family preservation court. She had lived in a sober living home since June 1, 2012, and received a letter of recommendation from the manager that she had followed the rules, was attending college, and had a job. Mother claimed it would be in the child's best interests to provide her with six months of reunification services because she had a strong bond with him.

On May 7, 2012, Father called the social worker and advised that he was out of jail, residing with his parents, and working for his family business. He stated he wanted to establish some visitation. Father informed the social worker that he was on probation. Father and Mother visited the child on May 31. The parents were excited to see their son and "showered him with hugs and kisses." The child smiled. As of May 31, the social worker had been unable to obtain the conditions of Father's probation.

Father was helping his family because his mother was recently placed in a home due to Alzheimer's disease and his father recently had a stroke. Father had completed substance abuse, 12-step, and parenting and life skills programs in jail and told the social worker that he would forward the information to the Department. In jail, Father received

5

dual diagnoses of depression and anxiety and was placed on medication; however, he stopped taking the medication because he did not like how it made him feel.

Both parents were positive for hepatitis C and were not under any care or treatment. They were leading separate lives according to Mother. As of June 12, 2012, the child was deemed medically fragile. On June 26, he was placed in a new prospective adoptive home.

On July 12, 2012, the juvenile court denied Mother's section 388 petition. After considering the evidence, the court commended Mother for changing her life; however, it could not find a change of circumstances that was sufficient to justify modifying or changing the current court order. Recognizing it did not need to reach the issue of best interest, the court noted it would not be in the best interests of the child "to attempt to re-unify . . . with the mother at this time." Mother's appeal of the court's ruling is pending before this court.

A contested section 366.26 hearing was set for October 16, 2012. According to the social worker's report prepared for the hearing, the child had started to show emotions, laughing and smiling when interacting. He played with toys and enjoyed running around outside. He was also starting to show an attachment to his prospective adoptive parents. During his monthly visits with his parents, the child showed an occasional glimpse of excitement; however, he did not cry or display sadness when leaving them. The social worker opined that he was comforted and soothed by the presence of his prospective adoptive parents. The Department recommended terminating all parental rights and selection adoption as the permanent plan.

6

Father filed a section 388 petition on October 16, 2012, requesting that the court vacate the section 366.26 hearing and that the child be returned to his care with family maintenance services, or, in the alternate, reunification services. He alleged changed circumstances, in that he had completed a 12-step program, a job search program, a 180-day residential substance abuse treatment program, and HIV and hepatitis C prevention. Father had also been gainfully employed since April at Edge Equipment Rentals and had established suitable housing. The court granted a hearing on the petition.

On October 16, 2012, the juvenile court did not find that the circumstances had changed enough to warrant a change in the court's previous orders. Thus, it denied Father's section 388 petition. Thereafter, the section 366.26 hearing was held. Mother argued she had consistently visited with the child and that she had been loving and appropriate throughout the dependency. She further argued that she had a bond with the child that warranted a lesser plan of guardianship. The court found that termination of all parental rights would not be detrimental to the child, in that none of the exceptions contained in section 366.26, subdivisions (c)(1)(A) and (B) applied. Finding it likely the child would be adopted, the court terminated parental rights. Both parents appeal.

## II. DENIAL OF SECTION 388 PETITION

Father contends the juvenile court erred in denying his section 388 petition because he had established changed circumstances and the proposed change would be in the child's best interests.

A juvenile court order may be changed, modified or set aside under section 388 if the petitioner establishes by a preponderance of the evidence that (1) new evidence or

7

changed circumstances exist, and (2) the proposed change would promote the best interests of the child. (*In re Stephanie M*. (1994) 7 Cal.4th 295, 316-317.) The party making the request to change the court order bears the burden to show both a legitimate change of circumstances and that undoing the prior order would be in the best interest of the child. (*In re Kimberly F*. (1997) 56 Cal.App.4th 519, 529 (*Kimberly F*.).) Generally, the petitioner must show by a preponderance of the evidence that the child's welfare requires the modification sought. (*In re B.D*. (2008) 159 Cal.App.4th 1218, 1228.) We review an order denying a section 388 petition under the deferential abuse of discretion standard. (*Kimberly F*., *supra*, at p. 533.)

The *Kimberly F*. court identified three factors to guide the court's discretion in considering a section 388 petition: (1) the seriousness of the problem that led to the dependency; (2) the relative strength of the relationships between the child and the parent and the child and the caretaker; and (3) the degree to which the underlying problem has been ameliorated. (*Kimberly F*., *supra*, 56 Cal.App.4th at pp. 531-532.)

With regard to the first factor, the underlying problem was Father's chronic and unresolved history of abusing methamphetamine. Substance abuse is a serious problem that cannot be easily ameliorated. (See *Kimberly F*., *supra*, 56 Cal.App.4th at p. 532.)

With regard to the second factor, Father notes that since his release from prison, he has consistently visited the child and the visits were always appropriate. However, from the inception of the case (May 2011) until May 2012, Father was incarcerated and there was no visitation because the child could not tolerate enclosed places. When actual visitation commenced with Father, it was supervised and one time per month. In

8

contrast, by the time of the section 388 hearing in October 2012, the child had lived with the prospective adoptive parents for nearly four months and he was four years old. Father did not have any noticeable bond with the child, who was developing an attachment to his prospective adoptive parents. Given these facts, this factor militates against granting the petition.

With regard to the third factor, Father had completed a 12-step program, a job search program, a 180-day residential substance abuse treatment program, and HIV and hepatitis C prevention. He was gainfully employed and had suitable housing. However, it had only been six months since Father moved out of his residential substance abuse program where he was in a restricted, controlled environment, and there is no evidence that he had enrolled in any programs to assist him in maintaining sobriety. Even a showing of great effort to make improvements will not necessarily be persuasive when a parent has an extensive history of drug use. (*In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1081 [Fourth Dist., Div. Two] [affirming the denial of a section 388 petition when the parents' efforts at drug rehabilitation were only three months old at the time of the section 366.26 hearing]; *In re Casey D.* (1999) 70 Cal.App.4th 38, 47-48 [affirming the denial of a section 388 petition when the mother with an extensive history of drug use had been drug free for only a few months and had not completed her treatment program]; *In re Mary G.* (2007) 151 Cal.App.4th 184, 205-206 [mother's very recent treatment for drug abuse and bipolar disorder was not even a prima facie case of changing circumstances]; *In re Amber M.* (2002) 103 Cal.App.4th 681, 686 [no abuse of discretion

9

in denying a section 388 petition where the parent established only a 372-day period of abstinence].)

Here, we consider Father's sobriety in light of his past substance abuse history. Father had been using methamphetamine since the time Mother met him, or six years prior to the initiation of these dependency proceedings. According to Father's stepfather, he had been a methamphetamine addict for "'many, many years.'" Father's addiction is further demonstrated by his criminal history, which dates back to 2001. Moreover, he received a dual diagnoses of depression and anxiety and had been placed on medication, which he stopped taking because he did not like the way it made him feel. Father was able to show only that his circumstances were changing, not that they had changed within the meaning of section 388. (See *In re Mickel O*. (2011) 197 Cal.App.4th 586, 615.) Thus, the juvenile court did not abuse its discretion in determining he had failed to establish that circumstances have changed for purposes of section 388.

Regarding the child's best interests, Father claims that (1) the reason for the dependency (drug addiction and child neglect) no longer existed; (2) given the fact that the child was diagnosed with autism, his nonverbal condition was not caused by neglect; and (3) there was a very strong bond between them. However, because of his history of substance abuse, Father is unable to establish that he is capable of adequately caring for the child., who has been diagnosed as a special needs child. The child needed a caregiver who was highly stable and could advocate for his needs. There was no evidence that Father could be that person. The child had not been living with Father since the inception of the case. By the time of the section 388 hearing, the child had been out of Father's

care for nearly one and a half years of his four years of life. While he enjoyed visits with Father, the child did not cry or display any sadness when leaving. Thus, there was no evidence of any significant bond between the two.

On the other hand, the child is in a home that is providing for his special needs. He is finally beginning to develop a vocabulary and engage more in play. The prospective adoptive parents have provided a permanent, stable and secure home that could meet all of his needs. The child is showing an attachment to them, as evidence by the fact that he is comforted and soothed by their presence. "'When custody continues over a significant period, the child's need for continuity and stability assumes an increasingly important role. That need will often dictate the conclusion that maintenance of the current arrangement would be in the best interests of that child.' [Citations.]" (*In re Stephanie M.*, *supra*, 7 Cal.4th at p. 317.) In this case, the child's need for structure, consistency, and nurturance dictates the conclusion that maintenance of his current arrangement would be in his best interests.

Accordingly, we reject Father's argument that the court erred in denying his section 388 petition.

### III.  BENEFICIAL PARENTAL RELATIONSHIP EXCEPTION

Mother contends the juvenile court erred by terminating her parental rights because the court should have applied the parent/child relationship exception.[4] (§ 366.26, subd. (c)(1)(B)(i).)  Father joins in the argument.

At a section 366.26 hearing, the juvenile court determines a permanent plan of care for a dependent child.  (*In re Celine R*. (2003) 31 Cal.4th 45, 52-53; *In re Casey D*., *supra*, 70 Cal.App.4th at p. 50.)  Adoption is the permanent plan preferred by the Legislature.  (*In re Autumn H*. (1994) 27 Cal.App.4th 567, 573.)  "'Only if adoption is not possible, or if there are countervailing circumstances, or if it is not in the child's best interests are other, less permanent plans, such as guardianship or long-term foster care considered.' [Citation.]" (*Id*. at p. 574.)

"Once the court determines the child is likely to be adopted, the burden shifts to the parent to show that termination of parental rights would be detrimental to the child under one of the exceptions listed in section 366.26, subdivision (c)(1). [Citations.]"  (*In re S.B*. (2008) 164 Cal.App.4th 289, 297.)  In this case, Mother argued that the beneficial parental relationship exception under section 366.26, subdivision (c)(1)(B)(i) applies.

The beneficial parental relationship exception applies when there is "a compelling reason for determining that termination would be detrimental to the child" because the parent has "maintained regular visitation and contact with the child and the child would

---

[4]  The Department questions whether Mother raised this issue at the trial level, arguing that the failure to assert the exception waives the right to claim error on appeal. (*In re Lorenzo C*. (1997) 54 Cal.App.4th 1330, 1343.)  We have reviewed the record and conclude that, although loosely worded, the issue was raised.

benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) To prove the existence of a beneficial parental relationship, the "parent must do more than demonstrate 'frequent and loving contact[,]' [citation] an emotional bond with the child, or that parent and child find their visits pleasant. [Citation.]" (*In re Derek W.* (1999) 73 Cal.App.4th 823, 827.) The parent must show that the "relationship promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents. In other words, the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*In re Autumn H.*, *supra*, 27 Cal.App.4th at p. 575.)

In reviewing challenges to a trial court's decision as to the applicability of the parental relationship exception, we will employ the substantial evidence or abuse of discretion standards of review, depending on the nature of the challenge. (*In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1315-1316.) We will apply the substantial evidence standard of review to evaluate the evidentiary showing with respect to factual issues. (*Id.* at p. 1315; §§ 366.26, subds. (c)(1)(B)(i), (v).) However, a challenge to the trial court's determination of questions such as whether, given the existence of beneficial parental relationship, there is a compelling reason for determining that termination of parental rights would be detrimental to the child "is a quintessentially discretionary

13

determination." (*In re Scott B*. (2010) 188 Cal.App.4th 452, 469.) We review such decisions for abuse of discretion. (*Ibid*.) In the dependency context, both standards call for a high degree of appellate court deference. (*Ibid*.; *In re Jasmine D*. (2000) 78 Cal.App.4th 1339, 1351.)

Regarding the threshold requirement of maintaining regular visitation and contact with the child, the Department concedes, and we agree, that Mother maintained regular visitation. However, even if we assume the child has a relationship with Mother, the court must select adoption as the permanent plan unless it finds there is a compelling reason for determining that termination of parental rights would be detrimental to him. (§ 366.26, subd. (c)(1)(B)(i).) Mother has failed to show that severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that they would be greatly harmed. (*In re Angel B*. (2002) 97 Cal.App.4th 454, 466.) The required compelling reason for a finding of detriment, i.e., evidence the child would suffer great harm, is absent. Indeed, Mother acknowledges the child was diagnosed as autistic and "did not have the normal capacity for or range of emotions that a normal three year old child would have." However, she also acknowledges the child had only recently started showing an attachment to the prospective adoptive parents. The fact that he was excited and smiled when seeing Mother and Father did not rise to the level of a positive emotional attachment that he shared with the prospective adoptive parents. As the Department reported, the child looked to them, not Mother and Father, for comfort and he was soothed by their presence.

14

Finally, Mother argues that "[r]ather than totally disrupt [the child's] life, the benefit he would gain from continuing his relationship with Mother would promote his well-being to such a degree that it would outweigh any possible permanence he would gain from adoption." Thus, she asks this court to reverse the order terminating parental rights and order a lesser plan of legal guardianship. We deny the request. Because the prospective adoptive parents in this case are able and willing to adopt the child, Mother's argument on this point is without merit.

As noted above, Mother had the burden to establish the applicability of the beneficial parental relationship exception in the lower court; on appeal, she has the burden of showing that the juvenile court's ruling was an abuse of discretion. We conclude that Mother has failed to meet this burden.

## IV. DISPOSITION

The orders appealed from are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


                                                                    HOLLENHORST
                                                                                        J.
We concur:


        RAMIREZ
                        P.J.

        RICHLI
                        J.


15